is Zelaya Diaz versus Barr, and Mr. Buczynski, did I pronounce it properly? Yes, Your Honor. All right, you may proceed. Thank you. Good morning, Your Honors, and may it please the Court. Over 20 years ago, the Executive Office for Immigration Review and the Immigration and Naturalization Service implemented a direct administrative closure of certain cases, cases like my client's case. The purpose of this policy was to give eligible non-citizens the opportunity to await promulgation of regulations providing for a procedure called repapering. We are still waiting for those regulations to this day. The administrative closure policy implemented directs administrative closure for those non-citizens affected by the retroactive stop-time rule of suspension of deportation, but for the new stop-time rule, can apply for cancellation of removal once they have the pertinent repapering regulations. The policy even goes so far as to direct sua sponte administrative closure by the BIA, and there is only one exception to administrative closure provided by the policy. One, where there are unusually adverse factors, and two, only if approved by the Office of General Counsel. My client, Mr. Zelaya, or Mr. Rizal, is more appropriately as that is his birth name, is eligible under the policy for administrative closure because he was eligible for suspension of deportation under the pre-IHRA scheme, and with repapering would be eligible for cancellation of removal under the current statutory scheme. He does not fall within the narrow exception, and DHS did not argue this below. Rather, regarding repapering, DHS stated, excuse me, that it was something that it was not going to do. The reason given below for denial of administrative closure, that is DHS's opposition and decision not to repaper Mr. Rizal is inapposite to the present matter. The IJ and the BIA were bound under ACARDI to follow their policy and administratively close this case. There's just one exception, and that's not present here. Exception is not... Mr. Belsinski, your ACARDI theory seems to give the force of law to internal agency memoranda, and I haven't seen law in that line of cases that would go that far to give force of law to something less formal than regulations, something formally adopted. Could you address that, please? Yes, thank you, Your Honor. I think this case falls squarely within the Ruiz. That case dealt with the other BIA, the Bureau of Indian Affairs, and there the Supreme Court extended ACARDI to a policy manual, which at least in my experience before some of the agencies regarding immigration practice, that is often, or at least sometimes, a compilation of individually issued memoranda for the agency. It could be different in other agencies, I'm not sure. But in summary, I think it falls under the ambit of Morton Ruiz, where it extended ACARDI from regulations to internal agency policies. How far do you think that reaches? I think it reaches to at least as far as to internal policy memoranda that directs judges and other agency personnel how to handle certain cases. I don't know if it would go much further, but I think it reaches this case. I have a procedural question about the ACARDI argument. Was that exhausted? Okay, yeah, thank you. So regarding waiver and exhaustion, Your Honor, first I would note that the administrative closure request based on the memoranda was made below, and I think that's sufficient to preserve the contention here. Conceitedly, ACARDI wasn't cited. Ideally, it would have been, but I don't think it's necessary, as you do not need to cite every single source of authority in support of a contention to preserve the issue. ACARDI here is simply additional authority in support of the request for administrative closure. Don't you think it would have been important to put that argument with the particularity that it's advanced on appeal in front of the board? I think that would have been best practice. Unfortunately, that was not done. I don't think it's necessary. One of the things that I wonder about, and has the BIA or circuit courts around the country interpreted Morton versus Ruiz, as you just did, to effectively give legal effect to the various memoranda that you point out in your brief? The closest I have seen is a Ninth Circuit case, Alcarez. I believe it's cited in the briefs, and I don't think it necessarily decided the issue. I think it remanded it back to the back. Additionally, on the waiver issue, your honors, the memoranda directs to respond to administrative closure by the BIA. That means the BIA was obligated to administratively close this case, even if the issue wasn't raised. And I think as a matter of logic, that makes waiver impossible and exhaustion necessary. What about one of your fallback arguments? As I understand it, Mr the Attorney General's opinion in In re Castro tomb and the effects of our court's decision in Mesa Morales earlier this year, I had thought that before the Attorney General's opinion in Castro tomb BIA precedents, specifically of that is young and the W. Y. U. Cases told immigration judges how to exercise discretionary decisions, how to exercise discretion in deciding about administrative closure. And the BIA here was operating on the assumption that Castro tomb was controlling, and it no longer is, at least in this circuit. I'm wondering whether we might whether it might make sense simply not not to say that administrative closure is required here under this pretty aggressive Akari theory, but rather that the immigration judge ought to exercise discretion in light of the event is young and W. Y. U. Factors. Yes, Your Honor. And the government brings that up in its brief as well. Um, while this case was on appeal before the Board of Immigration Appeals and I was decided in which it rejected administrative closure as a general policy that was reversed, of course, as you mentioned in Mesa Morales. And perhaps, um, the best course of case are the best decision would be to give the BIA an opportunity to consider those factors. Now that Mesa Morales has rejected Castro to I don't think that's necessary here. I think we can prevail on the Akari claim and additionally, um, the abuse of discretion claim involving the policies. But, um, yeah, the BIA never never considered the abuse and factors, and, um, that that's one way to resolve this case would be to remand it for the BIA to consider those factors and whether they, um, warrants administrative closure in this case. It isn't DHS is opposition of primary consideration under that construct, and we have DHS opposition here. It is a futility question. Basically, is this futile? Well, it is one. It is one consideration. I don't think it's necessarily determinative. Also, I'm kind of confused by DHS opposition below the policy as well directs them to to agree to these administrative closures. I'm not sure why that was different. In this case, there was really no explanation offered. I think that would lend some weight in the other direction. I see him almost out of time here. Your honors. Well, I guess we also have a statement from the BIA directly saying that the petitioner has, um, responded. There has, um, presented significant equities, so maybe it wouldn't be futile. Okay, if you'd like to reserve the rest of your time, that's fine. I would. Thank you. That's fine. That's right. Good morning. May please the court. Can you hear me? Yes. Okay. Please. The court. My name is Jocelyn, right? I'm here on behalf of respondents. The United States Attorney General. The only issue before the court is whether the board abuses discretion when it determined in this case that DHS is stated opposition to administrative closure and its position that it was unwilling to exercise its discretion to re paper petitioner's case here. In other words, DHS decided that in its prosecutorial discretion that it was going to continue to prosecute the deportation case that was successfully reopened 20 years after his in absentia removal order was entered against him and to prosecute those proceedings to their completion, which in this case is the order of deportation, um, to Honduras. So repapering is simply having DHS agree to terminate the deportation proceedings and to reinitiate removal proceedings under current Section 2 40 of the Act. It is undisputed that those prosecutorial discretion decisions are and that they are neither administratively nor judicially reviewable. It is undisputed here again that DHS opposed administrative closure and would not exercise its prosecutorial discretion discretion affirmatively in favor of miss of the petitioner because no purpose would have been served by administratively closing the deportation case. Given DHS is position, the board in this case could not have abused its discretion when it determined the paper that administrative closure was not warranted. This is a different kind of utility argument that the ultimate grant of relief would not be forthcoming because of DHS is opposition. That's correct, Your Honor. And I think I'm sorry, Your Honor, not that the board would decline to administratively close. It's that DHS wouldn't offer relief. Exactly. The sole purpose that he seeks for repapering for repapered here, DHS has already said it is not willing to do that. And because the board can't compel or or exercise persecute percent prosecutorial pardon me, prosecutorial discretion on DHS's behalf, there would have been no purpose served for for the board to grant administrative closure, even if it had that authority and to address Judge Hamilton's earlier question about Mesa Morales and Castro Tomb and its effect on this case. I don't believe as we put down in the brief, I don't believe that Castro Tomb was relevant or germane to the board's decision here. The board's decision was couched in terms of administrative closure is unwarranted. It acknowledged Castro Tom. It is not which which which as as counsel has already described, the attorney general held there that the authority to administratively close the is not given to the immigration judges or to the board. And of course, this court in Mesa Morales has rejected that interpretation of the regulations. So despite that, I understand, I understand that point. But one way of reading that decision is in essence saying there's this one factor under Uzbekistan and W. Y. U. There's one factor we're looking at that's conclusive without consideration of the broader set of factors. Is that am I misreading that? I would have to say yes, your honor, in the sense that the board here didn't apply Abit. It couldn't have because when it issued its decision, it was bound by the attorney general's decision and Castro to Mesa Morales hadn't come out yet. So Castro tomb is decisive then to the extent that it had in essence undermined, um, and remove the consideration of factors for discretion to be exercised that ought to now apply with at least within this circuit. While Mesa Morales states the rule, not necessarily your honor, because again, the board here didn't rely on whether or not its decision was not dependent on whether or not it had the authority to administratively close. When I just asked you, though, whether they considered all of the factors under as medicine, you said no, because Castro tomb replaced that right now that Castro tomb is off the table in this circuit. Well, I don't wanna argue, but I'm but you seem to be changing positions as to the importance of Castro tomb in this question. I think there's some slight tension given the timing of when the decisions were issued in this case. But I think the board here again was very careful in saying that administrative closure is not warranted. Given DHS is unreviewable decision not to exercise its prosecutorial discretion. Well, to put it differently, given DHS decision to continue to it that were before the immigration court and the board of immigration appeals. And so the repapering whether or not repapering was available simply wasn't germane, given the decision to continue to prosecute the case that was before it right now. Um, and again, with respect to the cardi argument that petitioner advances as his primary argument to this court, that argument was never exhausted. As we argued in the brief, both of the filings the petitioner made before the immigration judge and to the board acknowledged the discretionary nature of administrative closure, but the internal guidance memoranda all couched it in terms of recommendations should. These air. These air terms that don't mandate administrative closure by any means. I don't think that below that was ever argued. And so to the extent that he is now arguing that the agency not only had the discretion but was obligated and that it was mandatory for the board. Pardon me to administratively close the case. Given the internal guidance memoranda, that that particular argument was never exhausted below. And in this course, under this court's rules, exhaustion is mandatory because if under his, if under a petitioner's point of view, he had a right to administrative closure because it was in the sense that it was mandatory. And so exhaustion for that additional reason was required by the statute. Now, I don't agree that that it was mandatory. Um, and the board here certainly didn't address that argument because it was never made before it. But I think it's important that the board be given that opportunity to decide. Um, and that's to decide whether or not the the internal memoranda guidance, um, were considered mandatory or, um, guidance policy instead. He had that opportunity and he never did. Mr. I'm sorry, Mr. Sorry for interrupting you. Go ahead and finish your thought. I got a question. And I was just I was just going to make the point. The petitioner had the opportunity to make that argument, especially since Al Kharraz was on the books, and it was already decided it was already, um, in the on the radar. But he never made that argument below. And so it's been waived, and there's no reason to exhaust it for a second bite at the apple. I'm sorry. Go ahead. Sure. So the question I have it, um, is this the first time that that, um, this that the board I know it wasn't presented here. That's your your view. But it surely has to have been other cases where non citizens have made this this type of a cardi based argument based upon the policy, memoranda, etcetera. The proposed regulation to my, um, it has. And there are unpublished cases in other circuits. The Eighth Circuit in Castro Poo is one that comes to mind where the courts have have have said that there is no right to repapering. No, I was asking more about the board. If it were, if the argument were presented to the board, do you do you have any knowledge about how the board has handled that argument in the in other matters? I am not aware that the that the cardi argument has ever been made to the board, Your Honor. And again, I think and this is important to underscore petitioners argument that these memos issued in 2000 20 years ago now bind the board completely ignores the legal and that existed back then versus the landscape that exists now. And the most important landscape change is the fact that the prosecutorial discretion authority was moved from the attorney general where it resided in 2000 to the Department of Homeland Security secretary, where it now resides since 2003 with the creation of the Department of Homeland Security. Ignoring that important development, I think, is what separates this case in any event. The attorney general now the board acting as a delegate of the attorney general simply does not have the same kind of authority of prosecutorial discretion that the attorney general once delegated to it in 2000 when these memoranda were issued. And I see that I am running out of time unless the court has any further questions. We asked the petition for review be denied. Thank you very much, Mr Patzinski. Thank you, Your Honor. Regarding the government's argument that the agency decision denying administrative closure was reasonable because the decision to repaper was committed to discretion of DHS. Um, this argument ignores a cardian agreed upon procedures in the memory. First, the memoranda call for administrative closure and then repapering once we have the regulation. So the repapering decision supposed to come later. Second, sure, DHS has commencement proceedings generally, but the cardiac doctrine does and can limit that discretion. That's the entire point of a card. It requires the government to follow its own rules, even self imposed rules limit otherwise discretionary determinations regarding the futility questions we were going over earlier. Um, so I guess the question, in other words, is what's the point of DHS? His ultimate decision is going to be not to repay. Um, this is a premature issue. We don't have regulations yet. However, the proposed regulations provide a potential answer. The proposed regulations read in any deportation proceeding that was administratively closed, the service shall prepare and serve a notice to appear. If promulgated, this would appear to require the Department of Homeland Security to serve a notice to appear and repaper the case. Um, and that's why the timing of this this decision is important. The administrative closure was supposed to then make a decision on repapering, and it was going to be pursuant to and consistent with regulations that we don't have yet, which may require repapering and limit their discretion. I have nothing further. If there are no questions. All right. Thank you very much. Our thanks to both Council. The case is taken under